NATIONAL BANK OF DETROIT v. WING.

PIGGINS v. MARX.

1. APPEAL AND ERROR—INTERPLEADER CASES—DE NOVO REVIEW.
   Since a suit commenced by bill of interpleader is an equity case, the review thereof by the Supreme Court is *de novo*.

2. INTERPLEADER—EVIDENCE—FINDING AS TO OWNERSHIP OF FUND—COMMISSIONS.
   Evidence in interpleader suit justified finding that appellant who claimed fund in controversy knew that real estate company, of which opposing claimant was receiver, had for many years sold lots in subdivision, collected payments, and retained commissions for its services, where it appears that appellant, an attorney with years of experience in real estate transactions, was acting as trustee for equitable owners of the subdivision and had had numerous contacts with the company by way of receiving from it land contracts, letters, financial reports and checks pertaining to sale of lots, hence he was not in an equitable position to undo, by reason of a lack of any

written or other contract therefor, that which had been fully accomplished in the matter of payment of commissions.

3. FRAUDS, STATUTE OF—AGREEMENT TO PAY COMMISSIONS—EXECUTORY AGREEMENTS.

Provisions of the statute of frauds requiring that an agreement to pay a commission for or upon the sale of an interest in real estate be in writing relate only to agreements not fully executed and may not be applied to afford recovery incident to fully consummated transactions (3 Comp. Laws 1929, § 13417, as amended by Act No. 261, Pub. Acts 1945).

Appeal from Wayne; Jayne (Ira W.), J. Submitted April 15, 1947. (Docket No. 8, Calendar No. 43,427.) Decided June 27, 1947.

Bill of interpleader by National Bank of Detroit against Isabella Davis Wing, individually and as administratrix of the estate of Oliver D. Davis, deceased, and another. Harry Z. Marx intervened. Cross bill by Edward S. Piggins, receiver of Toynton-Brown Company, a Michigan corporation. Cross bill by intervenor. Decree for defendant Piggins, receiver. Intervenor appeals. Affirmed.

*Peck & Kramer,* for defendant Piggins, receiver.

*Harry Z. Marx, in pro. per. (Thomas L. Thomson,* of counsel).

NORTH, J. A bill of interpleader was filed by National Bank of Detroit against Isabella Davis Wing, individually and as administratrix of the estate of Oliver D. Davis, deceased, and Edward S. Piggins, receiver of Toynton-Brown Company, a Michigan corporation in the process of dissolution. Harry Z. Marx, was permitted to intervene. A settlement was effected in consequence of which

A contract to pay a commission for sale of an interest in land may be required to be in writing, see 1 Restatement, Contracts, § 178, comment e.

Isabella Wing, both individually and in her representative capacity, no longer has any interest in the subject matter of this suit. The contest for ownership of the funds deposited in National Bank of Detroit is between Harry Z. Marx, intervener, and Edward S. Piggins, receiver of Toynton-Brown Company. Except as to the sum of $186.04 which the receiver admits belongs to the intervener, the receiver prevailed in the trial court. From the decree entered the intervening defendant, Harry Z. Marx, has appealed to this Court.

Appellant seeks to establish his ownership of an account in the National Bank of Detroit created by deposits made by the Toynton-Brown Company of moneys collected from the sale of lots in Riverwood Estates Subdivision of which he was the grantor in deeds or the vendor in land contracts, acting as trustee for the owners. This account, known as the "Riverwood Account," amounted to $880.67. Appellant in his amended cross bill also seeks to recover the sum of $6,702.62 which he alleges was wrongfully retained as sales commissions by the Toynton-Brown Company from collections made on sales of lots.

The Toynton-Brown Company was incorporated in 1938 by Charles F. Brown, Ralph E. Toynton and their wives. The general purpose of this corporation was to negotiate real estate transactions. A memorandum of policy was drafted by Charles F. Brown and approved by Ralph E. Toynton at the time the corporation was formed. It defined the respective duties of Brown and Toynton providing that Brown would "have general charge of acreage and suburban activities" while Toynton would take charge "of the general brokerage." Charles F. Brown had previously done real estate business as Thompson-Brown Company and as Charles F. Brown. The memorandum of policy provided:

"The old companies will be used merely as holding companies with no new business of any nature transacted by either, of them.  *  *  *  The only object of keeping the old companies as going concerns is for the purpose of completing business now in process of completion and for the purpose of liquidating obligations.  The parties hereto earnestly pledge their undivided energy and support to the aggressive progress of the new company, keeping in mind always the highest standard of ethics and business practice."

During the years 1939, 1940 and 1941, Charles F. Brown held a real estate license, issued by the Michigan corporation and securities commission, as an associate real estate broker as a member or officer of Toynton-Brown Company.  In April, 1939, Harry Z. Marx authorized Toynton-Brown Company to make an offer and pay a deposit of $200 on certain real estate held by Union Guardian Trust Company in its fiduciary capacity.  Charles F. Brown acted on behalf of Toynton-Brown Company.  The offer to purchase was accepted and on January 22, 1940, a land contract for the sale of this real estate was executed, Harry Z. Marx being the purchaser. In July, 1939, Charles F. Brown told Ralph E. Toynton that the Toynton-Brown Company was to have a selling contract on said real estate and that the company was leaving its acreage commission in the venture for a stock interest in the property to be known as Riverwood Estates Subdivision.

The Toynton-Brown Company developed the Riverwood Estates Subdivision for the sale of individual lots, arranging for and advancing corporate funds to pay for having the real estate surveyed, and its streets graded and gravelled.  Signs offering the property for sale were erected on the property by Toynton-Brown Company.  Toynton-Brown Company undertook all of the preliminary

steps including the preparation of land contracts in effecting sales of the lots in this subdivision. The land contracts were sent to Marx by Toynton-Brown Company, accompanying letters of transmittal were written on Toynton-Brown Company stationery.

Vendees in these land contracts made their payments to Toynton-Brown Company. Until July 1, 1941, it was the practice of Toynton-Brown Company to deduct their commissions from collections and credit said commissions to the company. In June or July, 1941, a separate bank account was set up for the deposit of collections from lots sold in Riverwood Estates Subdivision and each month thereafter Toynton-Brown Company drew checks against this account for commissions earned in the preceding month. Checks were drawn and mailed by the Toynton-Brown Company to appellant. Monthly collection reports and balance sheets pertaining to the fiscal status of lots sold in said subdivision were prepared and submitted to Charles F. Brown and appellant received some of them. A set of books called the Riverwood Estates books was opened. Appellant admitted somewhat reluctantly that he owned these books but denied that he knew the contents until after dissolution proceedings were commenced. They reflected financial data pertaining to transactions involving the sale of lots in Riverwood Estates Subdivision. At the time the bill for dissolution of the Toynton-Brown Company was filed, the ledger of that company showed that certain sums were due it from the owners of Riverwood Estates Subdivision. The Riverwood Estates books also showed that these sums were owed to Toynton-Brown Company.

Appellant asserts that he never consented to the action of Toynton-Brown Company in selling the lots in Riverwood Estates Subdivision and did not

learn that Toynton-Brown Company had sold lots
in said subdivision until after dissolution proceed-
ings were initiated.  It is his claim that he entrusted
the development of this subdivision to Charles F.
Brown, individually, whom he had known and dealt
with for years and in whom he had implicit confi-
dence.  He also asserts he opposed the formation
of Toynton-Brown Company and that he stated to
Charles F. Brown and Ralph E. Toynton that
Toynton-Brown Company was to have no part in
the development and sale of lots in Riverwood Es-
tates Subdivision.  Appellant Marx testified in sub-
stance that when he noticed he was receiving checks
for the sale of lots in said subdivision from
Toynton-Brown Company, reports anent the finan-
cial status of real estate transactions involving the
sale of lots in said subdivision and letters concern-
ing the sale of said lots written on the stationery of
Toynton-Brown Company, he asked Brown for an
explanation; that Brown told him these things were
being done merely as an accommodation for Brown.
Appellant also claims that it was his understanding
that Brown individually was collecting the commis-
sions on the sales of the lots in said subdivision,
and appellant asserts that if Brown made arrange-
ments with Toynton-Brown Company to sell lots,
"then that was definitely contrary to instructions."
The sum and substance of appellant's contention is
that Toynton-Brown Company was at best a mere
volunteer or interloper acting without authority of
a written contract or any contract for that matter,
and therefore its retention of funds collected as
commissions was unlawful.  Appellant does not as-
sert a right to recover on the ground that the
retained commissions were excessive.

This being an equity case, review in this Court
is *de novo.*  Laying aside for the moment possible

application of the statute of frauds, we first consider appellant's contention that no contract, much less a written contract, existed which warranted Toynton-Brown Company's selling lots in Riverwood Estates Subdivision and retaining commissions on the sales. Incident to such consideration it may be conceded that neither a written nor an express oral contract existed by which Toynton-Brown Company was authorized to sell the lots and retain commissions. However, the existence or nonexistence of such a contract is unimportant, because this is not the case of a real estate agent seeking to collect commissions on the sale of real property. Instead, it is the case of a grantor or vendor seeking to undo that which has been fully accomplished, and on the theory that had the commissions not already been paid the real estate agent for want of a contract could not collect such commissions.

Despite appellant's denials, disavowals and explanations we think the record justifies the finding that he knew and consented to Toynton-Brown Company's selling the lots, collecting payments and retaining commissions for its services. In this connection, it is well to note that appellant is an attorney who has had years of extensive experience in real estate transactions. Furthermore, he was acting as a trustee for the equitable owners of this subdivision and therefore doubtless was mindful of what was being done and how it was being accomplished. At the outset, appellant authorized Toynton-Brown Company to make an offer to purchase the real estate in question and to pay a deposit in connection with that offer. He received from the Toynton-Brown Company land contracts, letters, financial reports, and checks, all of which pertained to the sale of lots in Riverwood Estates Subdivision. A set of books, which we think were

kept for appellant's benefit, called the Riverwood
Estates books was prepared in which the entries
were in accord with the ledger entries of Toynton-
Brown Company as to sales of lots in Riverwood
Estates Subdivision.   The entries in both sets of
books are indicative of the various transactions
having, been between the Toynton-Brown Company
and Marx, rather than between Brown individually
and Marx.

Without further review of facts and circum-
stances disclosed by the record, we are of the opin-
ion that, on the basis of facts actually within
appellant's knowledge and his own acts in relation
thereto, notwithstanding appellant's denial of such
knowledge, he knew of and consented to the activi-
ties carried on, and the services rendered by,
Toynton-Brown Company in his behalf and that he
accepted such benefits with full knowledge and
understanding.   Under such circumstances, because
there is no equity in appellant's contention, he
should not prevail in this equity suit, unless such a
result is unavoidable perforce of the statute of
frauds.

As hereinbefore indicated appellant relies on the
statute of frauds.   The pertinent statutory provi-
sion reads:

"SEC. 2. In the following cases specified in this
section, every agreement, contract and promise
shall be void, unless such agreement, contract or
promise, or some note or memorandum thereof be
in writing and signed by the party to be charged
therewith, or by some person by him thereunto law-
fully authorized, that is to say:    *    *    *

"5. Every agreement, promise or contract to pay
any commission for or upon the sale of any interest
in real estate."   3 Comp. Laws 1929, § 13417, as
amended by Act No. 261, Pub. Acts 1945 (Comp.

Laws Supp. 1945, § 13417, Stat. Ann. 1946 Cum. Supp. § 26.922).

The quoted provisions of the statute relate only to agreements, promises or contracts which have not been fully executed. They may not be applied to and thereby afford a basis of recovery incident to fully consummated transactions. Such was our recent holding in *Grand Rapids Realty Co.* v. *Rogers*, 317 Mich. 454. As being particularly applicable to the instant case see *Bagaeff* v. *Prokopik*, 212 Mich. 265 (17 A. L. R. 1292). In 37 C. J. S. at page 738, citing many authorities, it is said:

"It is well settled that the statute of frauds applies only to executory contracts, and not to those which have been executed and performed completely on both sides; in such cases the rights, duties, and obligations of the parties are entirely unaffected by the statute, or at least the contract is binding to the extent that it has been executed."

The transactions here involved extended over a period of years of service of which appellant had the benefit, and either by contract or common consent the Toynton-Brown Company retained the earned commissions. The various transactions were fully executed. Appellant, having come into a court of equity, is asserting a claim that is void of equity in so far as he was denied relief by the trial court. Out of the funds involved in this litigation appellant was decreed by the lower court to be entitled to $186.04, there being no controversy as to that amount. The balance of such funds was decreed to belong to the receiver of Toynton-Brown Company. The decree of the trial court is affirmed, with costs to appellee.

CARR, C. J., and BUTZEL, BUSHNELL, SHARPE, BOYLES, REID, and DETHMERS, JJ., concurred.